# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOSE ENRIQUE CORREA and JOSE
GUADALUPE CORREA,

                                Plaintiffs,

vs.

LEXISNEXIS RISK SOLUTIONS
INC.,

                                Defendant.

CASE NO.:

**JURY TRIAL
DEMANDED**

## COMPLAINT

Jose Enrique Correa and Jose Guadalupe Correa ("Plaintiffs") bring this Complaint against LexisNexis Risk Solutions Inc. ("LexisNexis Risk") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, arising out of the credit bureau defendant's mixing of Plaintiffs' credit files with another consumer's credit file, despite the fact that the other consumer has an entirely different name and Social Security number than Plaintiffs.

## PRELIMINARY STATEMENT

1

1.    The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.    Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.    Theses CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning

individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.      Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other

information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.    Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.    "Mixed files" create a false description and representation of a consumer's credit history.

9.    A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.    The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to

4

Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.    Mixed files are not a new phenomenon. Equifax, Experian, Trans Union, and LexisNexis Risk have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.    More recently, Equifax, Experian, Trans Union, and LexisNexis Risk have been the subject of numerous state attorney general actions relating to its mixed file problem.

13.    For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, Trans Union, and LexisNexis Risk over mixed files.[1] *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

---

[1] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited January 24, 2021; *see also* https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited January 24, 2021.

14.    Notwithstanding Equifax, Experian, Trans Union, and LexisNexis Risk's notice and being subject to repeated enforcement actions, mixed files continue to occur dispute consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

15.    Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

16.    Equifax, Experian, Trans Union, and LexisNexis Risk have each been sued thousands of times wherein an allegation was made that Equifax, Experian, Trans Union, and LexisNexis Risk violated the FCRA. Moreover, Equifax, Experian, Trans Union, and LexisNexis Risk are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

17.    Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

18.    For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The

6

jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, Trans Union, and LexisNexis Risk continue to mix consumers' credit files with other consumers' credit files.

19.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms.  Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, Trans Union, and LexisNexis Risk continue to mix consumers' credit files with other consumers' credit files.

21.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching

consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, Trans Union, and LexisNexis Risk continue to mix consumers' credit files with other consumers' credit files.

22.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

23.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

24.     Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Experian, Trans Union, and LexisNexis Risk to review their procedures when a mixed file case occurs.

25.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

26.     Plaintiffs Jose Enrique Correa and Jose Guadalupe Correa ("Plaintiffs") are natural persons who reside in the State of Illinois, and are "consumers" as that term is defined in 15 U.S.C. § 1681a(c).

27.     Defendant LexisNexis Risk Solutions Inc. ("LexisNexis Risk") is a limited liability company that resides in the State of Georgia, including in this District.

28.     LexisNexis Risk is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). LexisNexis Risk is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

31.     Plaintiffs mailed multiple written disputes regarding inaccurate information in Plaintiffs' LexisNexis Risk credit report to LexisNexis Risk located in Fulton County; Atlanta, Georgia.

32.     Defendant LexisNexis Risk received Plaintiffs' multiple written disputes in Fulton County; Atlanta, Georgia.

33.     Upon receipt of Plaintiffs' disputes, Defendant LexisNexis Risk forwarded such disputes to furnishers via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), the furnishers responded to Defendant LexisNexis Risk's electronic communications, which originated from Atlanta, Georgia, by sending its results electronically to Defendant LexisNexis Risk in Fulton County; Atlanta, Georgia

34.     Defendant LexisNexis Risk then processed the dispute results at its National Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiffs its final dispute results from Atlanta, Georgia.

## FACTS

### Summary of the Fair Credit Reporting Act

35.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

36.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

37.     The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

### The Credit Bureau's Processing of Credit Information

38.    Defendant LexisNexis Risk regularly receives information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

39.    These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

40.    Defendant collects information from thousands of furnishers.

41.    The process by which Defendant receives, sorts, and stores information is largely electronic.

42.    Furnishers report credit information to Defendant through the use of coded tapes that are transmitted on a monthly basis through software known as Metro 2.

43.    Defendant takes the credit information reported by furnishers and creates consumer credit files.

44.    Defendant maintains credit files on more than 200 million consumers.

45.    Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

### LexisNexis Risk's Mixed File Problem

46.    Defendant knows that different consumers can have similar names.

47.    Defendant knows that different consumers can have similar Social Security numbers.

48.    Defendant knows that different consumers with similar names can also have similar Social Security numbers.

49.    Defendant knows that public records often do not contain identifying information such as Social Security numbers or dates of birth.

50.    Defendant matches tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

51.    Defendant accomplishes this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

52.    Sometimes Defendant's matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

53.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each

of the three major CRAs, Equifax, Experian, Trans Union, and Lexis Nexis Risk, regarding their significant failures and deficiencies with respect to mixed files.

54.    Despite Defendant's long-standing and specific knowledge of the mixed file problem, Plaintiffs' credit report was still generated by Defendant containing information belonging to another consumer.

55.    A mixed or merged credit file is the result of Defendant inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

56.    There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Defendant to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

57.    The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Defendant.

58.    A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendant.

59.    These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

60.    Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

### The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

61.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

62.    Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

63.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

64.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

65.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

66.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

67.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

68.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

69.    The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine

whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

70.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

## FACTS AS TO PLAINTIFF JOSE ENRIQUE CORREA

**Exeter Finance Issues Plaintiff Jose Enrique Correa Increased Loan Interest Rate Due to Inaccurate Credit Reporting on April 19, 2024**

71.    On or about April 19, 2024, Plaintiff sought to obtain an auto loan and submitted a credit application.

72.    Shortly thereafter, Exeter Finance issued Plaintiff an increased loan interest rate based upon the contents of Plaintiff's credit report.

73.    Plaintiff takes great pride in Plaintiff's good name and established credit rating and works hard to ensure that the bills are paid in-full and on-time each month. Plaintiff believes and understands that their credit record with creditors is good, so Plaintiff could not imagine how the loan interest rate offered would be higher.

**Defendant LexisNexis Risk Fails to Provide Credit Disclosure on or about February 5, 2025**

74.     On or about February 5, 2025, Plaintiff Jose Enrique Correa requested a credit disclosure from Defendant LexisNexis Risk.

75.     Defendant LexisNexis Risk failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**Plaintiff Jose Enrique Correa Sees Inaccurate Information on LexisNexis Risk Credit File as of June 5, 2025**

76.     As of June 5, 2025, Plaintiff Jose Enrique Correa's LexisNexis Risk credit report contained insurance policy records belonging to another consumer.

77.     As of June 5, 2025, Plaintiff's LexisNexis Risk credit report contained auto insurance claim records belonging to another consumer.

78.     As of June 5, 2025, Plaintiff's LexisNexis Risk credit report contained C.L.U.E. Report records belonging to another consumer.

79.     As of June 5, 2025, Plaintiff's LexisNexis Risk credit report contained a social security number belonging to another consumer.

80.     Defendant mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should

have caused Defendant to realize Plaintiff is not the same person as this other consumer include the following:

  a) Plaintiff's legal name is Jose Enrique Correa and the personal and account information Defendant mixed into Plaintiff's credit reports belongs to another consumer; and

  b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

## Plaintiff Jose Enrique Correa's Dispute with LexisNexis Risk on or about June 24, 2025

81.    On or about June 24, 2025, Plaintiff Jose Enrique Correa filed a written dispute regarding the account information that does not belong to Plaintiff with Defendant because they were reporting another consumer's account information.

82.    Plaintiff's June 24, 2025 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

## LexisNexis Risk's Response to Plaintiff's June 24, 2025 Dispute

83.    Upon receiving Plaintiff's written dispute in June 2025, LexisNexis Risk verified that the disputed personal identifying information belongs to

Plaintiff, and that the personal identifying information is accurately reporting on Plaintiff's LexisNexis Risk credit report

84.    LexisNexis Risk verified for Plaintiff that three disputed Identification Records belong to Plaintiff, and that the records are accurately reporting on Plaintiff's LexisNexis Risk credit report.

85.    LexisNexis Risk verified for Plaintiff that one disputed address belongs to Plaintiff, and that the record is accurately reporting on Plaintiff's LexisNexis Risk credit report.

86.    LexisNexis Risk verified for Plaintiff that three disputed Insurance Policy Records belong to Plaintiff, and that the records are accurately reporting on Plaintiff's LexisNexis Risk credit report.

87.    LexisNexis Risk verified for Plaintiff that two disputed Auto Insurance Records belong to Plaintiff, and that the records are accurately reporting on Plaintiff's LexisNexis Risk credit report.

88.    LexisNexis Risk verified for Plaintiff that one disputed CLUE Report Record belongs to Plaintiff, and that the record is accurately reporting on Plaintiff's LexisNexis Risk credit report.

89.    Sometime after the June 24, 2025 dispute, LexisNexis Risk completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. §

1681i dispute reinvestigation to Plaintiff. LexisNexis Risk failed to properly reinvestigate and delete the disputed personal identifying information, which does not belong to Plaintiff, and continued to appear on Plaintiff's LexisNexis Risk credit report.

### Plaintiff Jose Enrique Correa's Dispute with LexisNexis Risk on or about September 3, 2025

90.    On or about September 3, 2025, Plaintiff Jose Enrique Correa filed a written dispute regarding the account information that does not belong to Plaintiff with Defendant because they were reporting another consumer's account information.

91.    Plaintiff's September 3, 2025 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

### LexisNexis Risk's Lack of Response to Plaintiff's September 3, 2025 Dispute

92.    Defendant LexisNexis Risk did not respond to Plaintiff's September 3, 2025 dispute.

93.     Defendant LexisNexis Risk did not indicate that Plaintiff's September 3, 2025 dispute was found to be frivolous or irrelevant.

94.     Defendant LexisNexis Risk failed to conduct a reinvestigation of Plaintiff's September 3, 2025 dispute, in violation of 15 U.S.C. § 1681i.

95.     Defendant LexisNexis Risk failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

96.     Thereafter, LexisNexis Risk continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

**Plaintiff Jose Enrique Correa's Dispute with LexisNexis Risk on or about October 9, 2025**

97.     On or about October 9, 2025, Plaintiff Jose Enrique Correa filed a written dispute regarding the account information that does not belong to Plaintiff with Defendant because they were reporting another consumer's account information.

98.     Plaintiff's October 9, 2025 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

**LexisNexis Risk's Lask of Response to Plaintiff's October 9, 2025 Dispute**

99.    Defendant LexisNexis Risk did not respond to Plaintiff's October 9, 2025 dispute.

100.    Defendant LexisNexis Risk did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

101.    Defendant LexisNexis Risk failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

102.    Defendant LexisNexis Risk failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

103.    Thereafter, LexisNexis Risk continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

**FACTS AS TO PLAINTIFF JOSE GUADALUPE CORREA**

**Defendant LexisNexis Risk Fails to Provide Credit Disclosure on or about February 7, 2025**

104.    On or about February 7, 2025, Plaintiff Jose Guadalupe Correa requested a credit disclosure from Defendant LexisNexis Risk.

105.    Defendant failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

**LexisNexis Risk Reports Inaccurate Information on Plaintiff Jose Enrique Correa's Credit File on or about February 7, 2025**

106. Upon information and belief, as of on or about February 7, 2025, Plaintiff's LexisNexis Risk credit report contained inaccurate information belonging to another consumer.

107. Defendant mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Jose Enrique Correa and the personal and account information Defendant mixed into Plaintiff's credit reports belongs to another consumer; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff Jose Guadalupe Correa's June 24, 2025 Dispute with LexisNexis Risk**

108. On or about June 24, 2025, Plaintiff Jose Guadalupe Correa filed a written dispute regarding the information that does not belong to Plaintiff with Defendant because they were reporting another consumer's accounts.

109.    Plaintiff's June 24, 2025 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

### LexisNexis Risk's Response to Plaintiff's June 24, 2025 Dispute

110.    Defendant LexisNexis Risk did not respond to Plaintiff's June 24, 2025 dispute.

111.    Defendant LexisNexis Risk did not indicate that Plaintiff's June 24, 2025 disputes were found to be frivolous or irrelevant.

112.    Defendant LexisNexis Risk failed to conduct a reinvestigation of Plaintiff's June 24, 2025 dispute, in violation of 15 U.S.C. § 1681i.

113.    Defendant LexisNexis Risk failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

114.    Thereafter, LexisNexis Risk continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

### Plaintiff Jose Guadalupe Correa's October 9, 2025 Dispute with LexisNexis Risk

115. On or about October 9, 2025, Plaintiff Jose Guadalupe Correa filed a written dispute regarding the information that does not belong to Plaintiff with Defendant because they were reporting another consumer's accounts.

116. Plaintiff's October 9, 2025 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

**LexisNexis Risk's Response to Plaintiff's October 9, 2025 Dispute**

117. Defendant LexisNexis Risk did not respond to Plaintiff's October 9, 2025 dispute.

118. Defendant LexisNexis Risk did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

119. Defendant LexisNexis Risk failed to conduct a reinvestigation of Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

120. Defendant LexisNexis Risk failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

121. Thereafter, LexisNexis Risk continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

122.   As a result of the Defendant's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiffs' credit; detriment to Plaintiffs' credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiffs' credit files.

123.   LexisNexis Risk maintains/maintained multiple credit files for Plaintiffs.

124.   At least one of Plaintiffs' LexisNexis Risk credit files contain or have contained personal information and credit account information, including derogatory collection accounts and charge offs, which do not belong or pertain to Plaintiffs.

125.   LexisNexis Risk's merging and matching algorithms have caused Plaintiffs' credit files to become mixed with personal and credit account information belonging to a different consumer.

126.   Within the two (2) years previous to the filing of this Complaint, LexisNexis Risk prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiffs that contained misleading and inaccurate information which belongs to another consumer, including without

limitation, personal information and credit accounts, which actually belong to a different consumer.

127.  LexisNexis Risk failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiffs.

128.  LexisNexis Risk knows that their matching algorithms are flawed and frequently result in mixed information and credit files belonging to two different consumers.

129.  LexisNexis Risk has been sued thousands of times by consumers and suffered judgments as a result of mixing consumer credit information and credit files.

130.  When LexisNexis Risk assembles consumer reports for their subscribers, they allow such subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases, like the instant matter, belong to another consumer.

131.   LexisNexis Risk also fails to require an exact match of all digits of a consumer's Social Security number, which may in some cases result in the inclusion of credit information which belongs to another consumer.

132.   However, when consumers like Plaintiffs request copies of their credit files, LexisNexis Risk requires a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

133.   Consequently, LexisNexis Risk's own procedures for disclosing information to consumers, as they are required to do by the FCRA, tend to mask or conceal the problem of mixed files.

134.   By concealing this information, LexisNexis Risk impairs the ability of consumers, like Plaintiffs, to identify and dispute errors resulting from mixed credit information or credit files.

135.   LexisNexis Risk has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit files and of Plaintiffs' consumer reports, in violation of 15 U.S.C. § 1681e(b).

136.   LexisNexis Risk's failure to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit files and of Plaintiffs' consumer reports was negligent and/or willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant)

137. Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-136 as if fully stated herein.

138. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit file they published and maintain concerning Plaintiffs.

139. As a result of Defendant's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiffs' credit; detriment to Plaintiffs' credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiffs' credit files.

140. Defendant's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

141.   Plaintiffs are entitled to recover attorney's fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendant LexisNexis Risk)

142.   Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-136 as if fully stated herein.

143.   Defendant violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiffs' credit file after it received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of both disputed credit accounts and hard inquiries; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit files.

144.   As a result of Defendant's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiffs' credit; detriment to Plaintiffs' credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional

distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiffs' credit files.

145.    Defendant's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

146.    Plaintiffs are entitled to recover attorney's fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681g
### Failure to Provide Disclosures to Plaintiff

147.    Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-136 as if fully stated herein.

148.    Defendant violated 15 U.S.C. § 1681g by failing to provide Plaintiffs' credit disclosures after each request.

149.    As a result of Defendant's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiffs' credit; detriment to Plaintiffs' credit ratings; the expenditure of time and

money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment.

150.   Defendant's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

151.   Plaintiffs are entitled to recover attorney's fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that Defendant negligently and/or willfully violated the FCRA;

b)    Awarding Plaintiffs actual damages, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiffs reasonable attorney's fees and costs from Defendant as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem

appropriate and just.


## DEMAND FOR JURY TRIAL

152.   Plaintiffs demand a trial by jury.


Dated:         March 2, 2026

*/s/ Joseph P. McClelland*
Joseph P. McClelland
LAW FIRM OF JOSEPH P.
MCCLELLAND, LLC
Georgia Bar No: 483407
691 John Wesley Dobbs Avenue NE,
Suite U-3
Atlanta, GA 30312
Telephone: (770) 775-0938
Fax: (470) 468-0070
Email: joseph@jacksonlaws.com

*ATTORNEY FOR PLAINTIFF*